UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 7 |
| SAINT CATHERINE HOSPITAL OF PENNSYLVANIA, LLC, | Case No. 5:12-bk-02073 (JJT) |
| Debtor. | |
| WILLIAM G. SCHWAB, Chapter 7 Trustee, | |
| Plaintiff, | Adv. Pro. No. |
| v. | |
| ST. CATHERINE HOSPITAL OF INDIANA, LLC, TOM AYERS, INDEPENDENT HEALTH SOLUTIONS, CORNERSTONE HEALTHCARE, NEW DIRECTIONS HEALTH SYSTEMS, LLC, SPECIALTY HEALTH, LLC, BOULDER INVESTMENT TRUST AND ST. CATHERINE HEALTH CARE, LLC, | |
| Defendants. | |

**COMPLAINT FOR (1) TURNOVER OF MONEY
OR PROPERTY PURSUANT TO 11 U.S.C. § 542, (2) AVOIDANCE OF
PREFERENTIAL AND FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 544,
547, 548 AND 550 AND (3) AVOIDANCE OF UNAUTHORIZED POST-PETITION
TRANSFERS PURSUANT TO 11 U.S.C. §§ 549 AND 550**

Plaintiff William G. Schwab (the "**Trustee**"), as chapter 7 trustee of the estate of Saint Catherine Hospital of Pennsylvania, LLC (the "**Debtor**"), by and through his undersigned special counsel, hereby files this complaint (the "**Complaint**") for (1) turnover of money or property pursuant to 11 U.S.C. § 542(a); (2) the avoidance of preferential and fraudulent transfers under 11 U.S.C. §§ 544, 547, 548 and 550 and applicable state law; and (3) the avoidance of

unauthorized post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550 against the defendants St. Catherine Hospital of Indiana, LLC ("**SCHI**"), Tom Ayers ("**Ayers**"), Independent Health Solutions **("IHS")**, Cornerstone Healthcare, Inc. ("**Cornerstone**"), New Directions Health Systems, LLC ("**New Directions**"), Specialty Health LLC ("**Specialty**"), Boulder Investment Trust ("**BIT**"), and Saint Catherine Healthcare LLC ("**SCHL**"), and alleges upon knowledge as to his own acts, and otherwise upon information and belief, as follows:

## JURISDICTION

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a), and 1334(b).

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (H) and (O), and the Trustee consents to the entry of final orders and judgments by the Bankruptcy Court.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein is 11 U.S.C. §§ 105, 542, 544, 547, 548, 549, 550 and Federal Rule of Bankruptcy Procedure 7001 and 7065.

## PARTIES

5. Plaintiff William G. Schwab is the duly appointed chapter 7 trustee of the Debtor's estate.

6. Defendant SCHI is, upon information and belief, an affiliate of the Debtor, with a primary business address of 4321 Fir Street, East Chicago, IN 46312.

7. Defendant IHS is an entity owned or controlled by Ayers, with a business address of 287 Millard Farm Ind. Blvd, Newnan GA 30263-1012. The registered agent for service of process for IHS is James T. Ayers Jr., 287 Millard Farmer Ind. Blvd., Newnan, GA 30363. Upon information and belief, IHS is the contract purchaser of the assets of SCHI.

8. Defendant Ayers is, upon information and belief, an individual who owns and/or controls IHS and has a business address of 287 Millard Farm Ind. Blvd., Newnan GA 30263. Ayers is also, upon information and belief, the person who controls Cornerstone and New Directions, which entities have also expressed an interest in acquiring the assets of SCHI.

9. Defendant Cornerstone is a Kentucky corporation owned or controlled by Ayers, with a business mailing address of 8816 Manchester Rd #191, Brentwood, MO 63144, and whose agent registered for service of process is Charles J. Fulner, 12730 Townepark Way, Suite 201, Louisville, KY 40243. Upon information and belief, Cornerstone is also an entity which has expressed an interest in acquiring the assets of SCHI.

10. Defendant New Directions is a Kentucky limited liability company owned or controlled by Ayers, with a business address of 1918 Sils Avenue, Louisville, KY 40205, and whose agent registered for service of process is Patrick W Ayers 1918 Sils Avenue, Louisville, KY 40205. Upon information and belief, New Directions is also an entity which has expressed interest in acquiring the assets of SCHI.

11. Defendant Specialty is a Delaware limited liability company and is the Debtor's manager pursuant to the Hospital Management Agreement (the "**Management Agreement**") dated May 1, 2006. Specialty has a business address of 3891 Ranchero Blvd., Suite. 10, Ann Arbor, MI 48108. Specialty's registered agent for service of process is Harvard Business Services, Inc. 16192 Costal Highway, Lewes, DE 19958.

12. Upon information and belief, Defendant BIT is a trust which was formed by and for the primary benefit of the Debtor's former manager, Robert M. Lane. The current trustee of BIT is Colleen Lane, and BIT has a business address of 78 Kings Highway South, Westport, CT 06880.

13. Defendant SCHL is a Delaware limited liability company. SCHL's registered agent for service of process is Harvard Business Services, Inc., 16192 Costal Highway, Lewes, DE 19958. SCHL owns the real property upon which the Debtor operates and is the Debtor's landlord.

## BACKGROUND

### A. Procedural History

14. On April 9, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code §§101 et seq. (the "**Bankruptcy Code**"). On the same date, the Debtor moved to appoint a chapter 11 trustee pursuant to § 1104 of the Bankruptcy Code.

15. On April 10, 2012, this Court granted the Debtor's motion to appoint a chapter 11 trustee.

16. On April 13, 2012, the Trustee was appointed as chapter 11 trustee to administer the Debtor's assets, and thereafter filed a motion to convert the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

17. Although the Trustee has been diligently reviewing the Debtor's records, he is still in the process of investigating the Debtor's financial condition and the events leading up to the Debtor's chapter 11 filing. In reviewing certain publicly available documents and interviewing the Debtor's former employees and agents, the Trustee has obtained the following information with regard to the recent history of the Debtor's financial collapse.

B. **The Debtor's Ownership and Mismanagement**

18.  Upon information and belief, in May, 2006, the Debtor and three of its affiliates were acquired by BIT. The three affiliates include (1) SCHI, (2) St. Catherine Health Care of Pennsylvania, LLC ("**SCHP**"), and (3) SCHL.

19.  On May 1, 2006, the Debtor and Specialty entered into the Management Agreement pursuant to which, for a fee of at least $75,000 per month,[1] Specialty agreed to manage certain aspects of the Debtor's affairs. Upon information and belief, Specialty had a similar management agreement with SCHI.

20.  Pursuant to Section 5.8 of the Management Agreement, Specialty agreed to perform bookkeeping and accounting functions for the Debtor.

21.  Pursuant to Section 5.12 of the Management Agreement, Specialty also agreed to perform all billing and collection functions on behalf of the Debtor.

22.  Upon information and belief, Specialty has used its position as bookkeeper and collections agent for the Debtor to divert the Debtor's accounts receivable to a non-Debtor account and has directed those proceeds be used for certain non-Debtor purposes.

23.  For example, the Debtor was owed certain accounts receivable from Capital Blue Cross as a result of services rendered by the Debtor. The Debtor, Specialty, and SCHI had each contracted with Capital Blue Cross to provide their respective employees with health benefits. At some point in 2011, the Debtor agreed to permit Capital Blue Cross to offset the amounts it, SCHI and Specialty owed for employee health benefits against the amounts which Capital Blue Cross owed the Debtor for patient services provided by the Debtor. Capital Blue Cross referred

---

[1] Notably, the $75,000 fee was only applicable to the first year. For each year after May 1, 2007, the management fee increased at the percent weighted average annual increase of the salaries of the Debtor's Chief Executive Officer, Chief Financial officer and Chief Nursing Officer.

5

PHIL1 2053288-3

to these as "take backs" and, upon information and belief, the total amount of "take backs" was approximately $1.7 million from January, 2011 forward.

24. Additionally, as noted in the March 26, 2012 minutes of the Debtor's board of managers (the "Board"), the Board authorized the opening of an alternate bank account "available in case a similar situation presented itself in the future—would provide an alternate means to handle fiscal matters." The Trustee has learned that these bank accounts were to be set up in the names of Merlyn Knapp and Katie Schroyer only, rather than in the name of the Debtor, so as to prevent the accounts from being garnished or otherwise attached by the Debtor's creditors.

## C. The Debtor's Financial History and Affiliate Transactions

25. Upon information and belief, in March of 2007, Robert Lane personally guaranteed a $15,000,000 loan from the Bank of Jackson Hole to BIT (the "**Jackson Loan**").

26. The Jackson Loan was secured by all of BIT's assets, which included the assets of the following companies: (1) the Debtor, (2) SCHI, (3) SCHL, (4) SCHP, and (5) Windriver LLC, another entity which, upon information and belief, was a limited liability company created for the benefit of Robert Lane.

27. On March 6, 2007, BIT, as lender, entered into a Loan Agreement with the Debtor, SCHI, SCHL, SCHP, and Specialty, as borrowers, to provide a revolving loan of up to $15,000,000.

28. Upon information and belief, in the fall of 2011, the Debtor transferred $300,000 to SCHI for payroll expenses. As of the Petition Date, the Trustee believes that all or a substantial portion of that amount is still due and owing to the Debtor from SCHI.

29. Upon information and belief, the Debtor has transferred other assets to SCHI for purposes of funding SCHI's operations pending a sale of SCHI or its assets.

6

30. Upon information and belief, there existed at the time of such transfers intercompany obligations between the Debtor and SCHI.

**D.  The Proposed Sale of SCHI**

31. Upon information and belief, the Defendants are currently negotiating a private sale of SCHI or its assets to an entity owned or controlled by Ayers.

32. Upon information and belief, the proposed sale will include assets owned by the Debtor.

33. Upon information and belief, the entities in control of the proposed purchaser have purchased other rural hospitals which, shortly after their purchase, ceased doing business due to financial mismanagement.

34. To date, no party has sought the Trustee's consent to sell the property of the Debtor's estate, nor has the Trustee consented to any such sale.

## FIRST CLAIM FOR RELIEF
**(Against Specialty for Turnover of Funds Under § 542 of the Bankruptcy Code)**

35. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

36. Specialty currently remains in possession of certain accounts receivable and funds (the "Funds") which constitute property of the estate within the meaning of § 541 of the Bankruptcy Code.

37. Specialty has failed and refused to turn over and deliver the Funds to the Trustee despite the Trustee's demand therefor.

38. Pursuant to § 542 (a) and (b) of the Bankruptcy Code, Specialty is required to turn over and deliver the Funds to the Trustee.

7

## SECOND CLAIM FOR RELIEF
### (Against SCHI for Turnover of Funds Under § 542 of the Bankruptcy Code)

39. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

40. SCHI currently remains in possession of certain funds previously loaned to SCHI by the Debtor for operating expenses, including but not limited to the $300,000 advanced to SCHI for payroll expenses and SCHI's portion of the Capital Blue Cross take backs for employee healthcare premiums which were deducted from the Debtor's accounts receivable.

41. Such funds constitute property of the Debtor's estate within the meaning of § 541 of the Bankruptcy Code.

42. SCHI has failed and refused to turn over and deliver such funds to the Trustee despite the Trustee's demand therefor.

43. Pursuant to § 542 (a) and (b) of the Bankruptcy Code, SCHI is required to turnover and deliver all monies loaned, advanced or otherwise transferred by the Debtor to SCHI.

## THIRD CLAIM FOR RELIEF
### (Against SCHI for Avoidance of Preferential Transfers Under 11 U.S.C. §§ 547 and 550)

44. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

45. SCHI is a non-statutory insider of the Debtor.

46. The Debtor, within the one year period preceding the Petition Date (the **"Preference Period"**) transferred at least $300,000 to SCHI permitted payment of SCHI's employee health insurance premiums for SCHI's employees to be deducted or otherwise offset

by Capital Blue Cross from amounts which Capital Blue Cross owed to the Debtor (the "**Preferential Transfers**").

47. At the time of the Preferential Transfers, SCHI was a creditor of the Debtor within the meaning of § 101(10) of the Bankruptcy Code.

48. The Preferential Transfers were made to or for the benefit of SCHI within the meaning of § 547(b) of the Bankruptcy Code during the Preference Period and reduced debts then allegedly owed by the Debtor to SCHI.

49. The Preferential Transfers were made on account of antecedent debts owed by the Debtor to SCHI prior to the dates of the Preferential Transfers.

50. At the time of the Preferential Transfers, the Debtor was insolvent.

51. By virtue of its receipt of the Preferential Transfers, SCHI received more on account of its debt than if such transfers had not been made and SCHI had received payment of such debt under the applicable provisions of Bankruptcy Code.

52. The Preferential Transfers are avoidable under § 547(b) of the Bankruptcy Code.

53. Pursuant to § 550(a) of the Bankruptcy Code, the recovery of property for the benefit of Debtor's estate is authorized to the extent avoided under § 547 Bankruptcy Code.

54. By reason of the foregoing, SCHI is liable to the Trustee in an amount equal to the Preferential Transfers, together with pre-judgment interest.

**FOURTH CLAIM FOR RELIEF**
**(Against SCHI for Avoidance of Constructively Fraudulent Transfers**
**Under 11 U.S.C. §§ 544, 548 and 550)**

55. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

56. The Debtor transferred at least $300,000 to SCHI during the two years preceding the Petition Date and, in addition, authorized the payment of SCHI's employee health insurance premiums for SCHI's employees to be deducted or otherwise offset by Capital Blue Cross from amounts owed by Capital Blue Cross to the Debtor (the "Fraudulent Transfers"), which transfers were to or for the benefit of SCHI.

57. The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

58. Upon information and belief, the Debtor was insolvent, became insolvent or intended or believed that it would incur debts beyond its ability to pay as they matured at the time the Fraudulent Transfers were made or as a result of the Fraudulent Transfers having been made, and/or the Debtor was engaged in a business or transaction for which the property remaining in its hands following the conveyance was an unreasonably small capital.

59. The Fraudulent Transfers were made within four years of the Petition Date.

60. By reason of the foregoing, the Fraudulent Transfers constitute avoidable fraudulent conveyances pursuant to §§ 544 and 548(a)(1)(B) of the Bankruptcy Code and applicable state law.

61. In accordance with § 550(a) of the Bankruptcy Code, the Trustee may recover from SCHI the amount of the Fraudulent Transfers which is avoidable under §§ 544 and 548, together with pre-judgment interest.

### FIFTH CLAIM FOR RELIEF
(Against Specialty Avoidance of Intentionally Fraudulent Transfers Under 11 U.S.C. §§ 544, 548 and 550)

62. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

63. Under the control of Specialty, the Debtor made certain transfers of its assets to third parties, which were then used for non-debtor purposes (the "**Specialty Transfers**").

64. The **Specialty Transfers** were specifically intended to deprive or otherwise had the effect of depriving the Debtor of operating assets and to benefit non-debtor third parties, including the Debtor's affiliates.

65. At the time of the Specialty Transfers, Specialty knew or reasonably should have known that the Debtor was insolvent or would be rendered insolvent as a result of the Specialty Transfers and thus would be left too thinly capitalized to survive after such transfers had been made.

66. The Specialty Transfers were fraudulent as to both creditors existing at the time of the Specialty Transfers and to persons or entities who became creditors of the Debtor thereafter.

67. The Debtor had at least one actual creditor as of the time of the Specialty Transfers holding an unsecured claim which is allowable within the meaning of § 544(b) of the Bankruptcy Code.

68. By reason of the foregoing, the Specialty Transfers constitute avoidable fraudulent transfers pursuant to §§ 544 and 548 of the Bankruptcy Code and applicable state law and, in accordance with § 550(a) of the Bankruptcy Code, the Trustee may recover from the Specialty the amount of the Specialty Transfers, together with pre-judgment interest.

### SIXTH CLAIM FOR RELIEF
(Against Ayers, IHS, Cornerstone, New Directions, SCHI, SCHL, BIT and John Does 1-50 to Avoid and Recover Unauthorized Post-Petition Transfers Under 11 U.S.C. §§ 549 and 550)

69. The Trustee incorporates herein by this reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein at length.

70. Post-petition, Ayers, IHS, Cornerstone, and/or New Directions (the "**Purchaser Defendants**") engaged in negotiations with SCHI, BIT, and/or SCHL related to the purchase of SCHI or its assets.

71. Upon information and belief, a contract for the sale of the assets of SCHI has been entered into and/or consummated.

72. The assets to be sold include assets of the Debtor's estate.

73. Notwithstanding the fact that the assets to be sold include property of the Debtor's estate, the Trustee was not a party to the negotiations.

74. The sale or transfer of the Debtor's assets which were in the possession of SCHI has not been authorized by this Court, nor has any such transfer been authorized under any provision under the Bankruptcy Code.

75. To the extent that estate property has been conveyed to one or more third parties, such transfers are avoidable under § 549 of the Bankruptcy Code.

76. The Purchaser Defendants constitute immediate or mediate transferees of property of the estate under § 550 of the Bankruptcy Code.

77. Because the transfer of estate property to the Purchaser Defendants is avoidable under § 549 of the Bankruptcy Code, the Trustee is entitled to recover the value of the transferred property under § 550 of the Bankruptcy Code.

WHEREFORE, the Trustee demands that judgment be entered in his favor and against the Defendants as follows:

    (a) Requiring Specialty to turn over all funds constituting property of the estate under 11 U.S.C. § 542(a);

(b) Requiring SCHI to turn over all funds and property constituting property of the estate under 11 U.S.C. § 542(a);

(c) Requiring SCHI to immediately remit to the Trustee all funds avoidable under 11 U.S.C. § 547 as preferential transfers;

(d) Requiring SCHI to immediately remit to the Trustee all funds avoidable as constructively fraudulent transfers under 11 U.S.C. § 544 and 548;

(e) Requiring Specialty to immediately remit to the Trustee all funds avoidable as fraudulent transfers under 11 U.S.C. § 544 and 548;

(f) Requiring the Purchaser Defendants to immediately remit to the Trustee all property obtained by or conveyed to such parties in violation of 11 U.S.C. § 549;

(g) Awarding prejudgment interest, costs and attorneys' fees to the extent permitted under applicable law; and

(h) For such other and further relief as may be just and proper.

Dated: May 8, 2012

KLEHR | HARRISON | HARVEY | BRANZBURG LLP

By: _____
Jeffrey Kurtzman, Esquire
Kathryn Perkins, Esquire
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-4493
Facsimile: (215) 568-6603

Special Counsel for William G. Schwab,
as Chapter 7 Trustee

13